Please be seated. You call the next case, please. Mr. Nickley? Is that how you pronounce it? Okay, good. Thanks. Proceed. Please be seated. Fifth Court, Counsel. There's three issues raised on appeal in this case, Your Honors. The first being whether the trial court views its discretion in ordering Mr. Eickholtz, or Neal Eickholtz, to contribute towards the educational expenses of his son, Eric Eickholtz. The basis for that is that it was unreasonable for Eric Eickholtz to attend the University of Iowa. The second issue is that if this court affirms the trial court and determines that such costs were reasonable, which obviously we're arguing they should not, that in awarding educational expenses retroactively, prior to the filing of the petition for contribution, that the trial court also views its discretion. Finally, the third issue, Your Honors, is that it is our contention that the trial court views its discretion in ordering Mr. Eickholtz to contribute towards the attorney fees of Mrs. Jelm-Eickholtz in bringing her petition. Now, what this case essentially boils down to is that Is the second issue going to be answered tomorrow? I hope so, Your Honor. Unfortunately, we do not have the guidance of the Supreme Court on that issue. Well, it's scheduled to be released tomorrow at 9 a.m. It is, Your Honor. To Peterson. Yes, I looked it up. It is, and I also did, and a little bit to my chagrin, because obviously we'd have the guidance of the Illinois Supreme Court on the issue. But I think Which we will tomorrow We will. But I think that the, in taking it one step further, that the issue raised by the Peterson case, Peterson v. Peterson, I think that their reasoning in that case was a sound reasoning. And for that reason, I hope and I expect that the Illinois Supreme Court will affirm that decision. And basically, without getting into great detail about that, considering that we will find out hopefully definitively one way or another tomorrow, the Peterson case found that educational expenses are a form of child support based on their interpretation of the statute and their review of the case law. Particularly, they relied on this court's reasoning in the Lafferetti case, where they found that educational expenses are a form of child support. Because of that rule, or excuse me, the section 510 applies. Therefore, child support cannot be retroactively modified prior to the petition. And that was the reasoning of the Peterson case. And it's our contention, obviously, that that's a sound reasoning. And it's our hope that the Illinois Supreme Court will affirm that decision. Going back to the issue regarding whether or not the educational expenses were reasonable, the court starts with the proposition that a child does not have an absolute right to a college education. Despite that, under section 513, a court may award reasonable college expenses. The statute lays out several factors that must be considered, particularly the financial resources of the parties, the standard of living the child had during the marriage or would have had if the marriage lasted, the child's financial resources, and the academic performance of the child. But in addition to that, courts have found other factors need to be considered, particularly the cost of the school. And this court in Street v. Street stated that the Illinois courts generally are less concerned with the type of school a child attends rather than the cost. And that is the primary issue in this case. Now, besides the cost, courts can look at the programs offered, how the school meets a child's needs, the benefits a child will receive in attending the school. And if we're talking about a private or out-of-state school versus a public or in-state school, that is a fact that has to be looked at as well. Now, in this case, Eric Eichholz chose to attend the University of Iowa. And I understand it's not a factor that can go into the court's decision, but it was a determination that was made without the discussion of Mr. Eichholz. Now, in going to the University of Iowa, Eric wanted to be a physical therapist, and he stated during his testimony the reason that he went to Iowa is because he liked the people there. Now, the problem with that is that the estimated tuition at Iowa was approximately $32,000. Now, he got a scholarship at approximately $8,500. He got a loan, $3,500. So we're looking at out-of-pocket expenses somewhere in the area of $18,000. Now, Mr. Eichholz at the hearing presented testimony and evidence that Eric was accepted to less expensive schools. There was expert testimony presented by a college planner by the name of John Brullo, and I apologize if I'm butchering the name. But that expert witness, who was certified as an expert by the trial court, testified that, first off, he was concerned about Eric's choice of Iowa because of the cost. He also testified that there are basically more jobs for graduates, there's more physical therapy jobs than there are graduates coming out for physical therapy. He testified specifically for every graduate in the physical therapy that there is 1.7 jobs waiting for that graduate. Based on that fact, the rankings really, I don't want to say they don't matter, but they shouldn't be a primary concern because there's more jobs than there are people coming out. So in looking at that and in taking that into consideration, Did he consider the university the person went to in regard to remuneration? Was there a discrepancy there? There was really no testimony about that, Your Honor, but going back to the point before, the rankings, you know, it doesn't really matter what university someone goes to because there's so many jobs out there. Now, Eric was accepted to St. Ambrose University. There was evidence presented that the tuition was $22,000 approximately. He received a scholarship in the amount of $12,000, and he got another loan in the amount of about $3,500. We're talking that with that, the out-of-pocket cost for Eric would be approximately $6,500. You're talking about almost a difference of $12,000 for him to go to St. Ambrose as opposed to the University of Iowa. Now, according to— I just have a very fast thing to say. It doesn't make any difference as long as there's more jobs out there than graduates who take those jobs. It doesn't matter where you go. Well, I mean— Would you say the same is true in law if it were that situation? It doesn't matter if you went to Harvard? No, Your Honor, and I understand your concern when you're saying that, but at the same time, you know, there's—when we're talking about the law, we're talking about a different field, and just from what I've read with the papers and everything else, there certainly is not more— Oh, no, today, but in years past. In years past, but I'm talking—and you're correct, and it may affect— but I would argue that physical therapy is not a similar field as where— obviously, if you go to a Harvard Law School, the job prospects for the type of firm may be different, but a physical therapist—it would be my argument that physical therapy is physical therapy. Now, saying that, assuming that there might be some type of—and I'm just— Why shouldn't Cleveland Clinic look at Harvard or Mayo look at Harvard before they look at Acme Junior College? That's probably correct, Your Honor, but we're not talking about Cleveland Clinic. We're talking about St. Ambrose University, and— No, I'm talking about the person who's going to hire somebody who's gone. Right, but once—and this is cited—this is the holding of the Susan v. Keller case. Once there's evidence presented that there are less expensive alternatives, it is the petitioner's burden to come forward with evidence to show the difference or why it's necessary for the student to go to the more expensive school, and there's two factors that must be looked at. There must be special programs or attributes that make the school— make additional costs reasonable under the circumstances, or there's got to be evidence that the more expensive school is necessary under the circumstances. What did the petitioner put on, you know, on those prompts? Anything? Well, what did they put on or what could they put on? I'm sorry, Your Honor. What did they put on? There was—the primary evidence was that he liked the people there, and that's—and so there was really no other evidence presented showing the relative attributes of— Well, didn't he say that he wanted to go on to graduate study at Iowa? He did, Your Honor. He did want—he said he wanted to go, you know, and what they've argued in the appellee brief is that, well, it's a six-year program. But the problem with that argument is twofold. One, it's just because it's a separate graduate program at Iowa. You've got to go four years for your undergrad, and then you have to be applied to and be accepted to the University of Iowa's graduate program. Just because you are admitted into the graduate program at Iowa does not mean you're going to be admitted to— or, excuse me, an undergraduate program does not mean you're going to be admitted to the graduate program. And Eric himself testified that he's still going to have to apply to the graduate program, and he expects it to be very difficult for him to get into that program. That was the sole testimony regarding that issue, Your Honors. And that does not in itself, or should not in itself, justify almost $12,000 of out-of-pocket costs. Because even if you went to—I'm sorry. Was there not some testimony that the University of Iowa is an outstanding school for physical therapy? It is, and there's no— So that's more than just liking the people, right? It is, and there's no disagreement that the University of Iowa obviously is a good school. For physical therapy. Well, for physical therapy, and I'm sure for other issues as well. But at the same time, we have the testimony from the experts saying that, well, but there's—you know, despite the fact that it is a good school, that Eric, first off, would be a good fit anywhere he went because of his— obviously he's a good student, and he's going to succeed wherever he goes. But there's also this issue where there's 1.7 jobs for every graduate, for every physical therapy student who graduates. So if he went to St. Ambrose, and that was—and he succeeded there, he could also still apply to the University of Iowa. And it's still—I would say it's speculative that he would be going to the University of Iowa for graduate school. There's a lot of factors that have to be decided. You know, I'm assuming he's a good student, but he's still going to have to apply. He's going to still have to be accepted, and— I'm still bothered by this idea that because there's 1.7 jobs out there for every one physical therapist. Yeah, you can get a job at Mayo Clinic, or you can get a job at Donner County General Hospital in Macomb. Well, I'm sorry. I mean, there's qualitative differences in jobs, even though there's 1.7 jobs, in that qualifications and where you go, what program, quality of the program, is going to probably suggest your opportunity to get a better job out of that 1.7 would be enhanced. It's a better program, wouldn't it? Well, and maybe part of the problem is that there was no evidence of that regard in the record. Is there any evidence that Iowa's got a better program? There is none, Your Honor. Is there any evidence that Iowa has a higher hiring rate for, you know, that their students, their graduates have a higher percentage of getting hired right out of school?  It's the person bringing the petition's burden to show that once there's evidence of a less expensive alternative. And there was no showing about that. It was just, you know, there was some testimony about the fact that he liked the people there. There was some testimony about that there was, you know, the graduate program, the six-year program, even though he still needed to be applied and there's no guarantee that he would be accepted to that school. And so based on those factors, it's our contention that the awarding of the expenses for him to attend University of Iowa were unreasonable and there was an abuse of discretion for the judge to do that. Now the second part that needs to be looked at is not only the choice of school, but whether Mr. Eichholz could afford to pay for that school. Counselor, you have two minutes. Thank you. And I'll be very brief. We argue that it's our contention that the street-versus-street case and the dry-sure case do not apply. As we've articulated in the brief, that it's not a similar situation in that the testimony was uncontradicted at trial that Mr. Eichholz and his current wife, the current Mrs. Eichholz, do not hold their money. Mrs. Eichholz has two special needs children and all her money goes to there. Mr. Eichholz pays the household expenses. Based on the income and expense affidavit, Mr. Eichholz makes his expenses less than his income. And to have him pay the out-of-pocket expenses, it was abuse of discretion. Now how much is he actually awarded to pay? Half of them or all of them? He was ordered to pay half of the educational expenses. Okay. So he's to pay half and his ex-spouse is to pay the other half? Right. And the way the trial court handled that was the former Mrs. Eichholz had taken out a parent-plus loan. And the way it was handled, I guess, a little bit with the agreement of attorneys, is that she was going to pay the first two years and he was going to pay the second two years. But the order was very clear that he's on the hook for one half of the college expenses, including for the 2008-2009 school year, which was retroactive to the filing of the petition for college contributions. So we're talking about the expenses above and beyond all the scholarship and aid, and his own personal responsible loan the student has, right? Right. So it's really half of the out-of-pocket expenses for the student. Right. So if it's out-of-pocket, say, $18,000, then Mr. Eichholz would have to pay $9,000 for that. What is the parent-plus? Is that where a parent signs on as financially responsible for the loan? Yes, Your Honor. Well, I believe it's actually a parent-plus loan taken by the parent to pay for that. Right. But unlike trying to get student loans out of students for the next 40 years, the parent actually is on that. Right. Right. So in a similar vein, in regards to the attorney's fees issue, there has to be a finding that first that Mrs. Eichholz, former Mrs. Eichholz, cannot pay her own attorney's fees and that Mr. Eichholz can, in fact, pay her attorney's fees. There was no testimony or really no evidence based on the income expense affidavits that Mrs. Eichholz, Mrs. John Eichholz, will be stripped of all means of support or that she'll be left economically unstable. Well, the financial affidavits that were presented by both parties, one shows a deficit of a monthly for about $1,000, right?  Well, the trial court, he deducted some of Mr. Eichholz's claim deductions to get to that. Actually, it shows that it's about negative $500 for Mr. Eichholz. The court, and we argue that it was an abuse of discretion for him to rule that way, determined that some of Mr. Eichholz's claimed expenses were not true claimed expenses, I guess, including a mandatory retirement. But the problem with that was this is not a typical child support situation where we're trying to get to the net income. And the statute says, here's what's deducted to figure out the net income. In these circumstances, the determination is whether the party can afford to pay. So, thank you. Based on what we stated in the briefs and what I've stated here today, we ask the court to reverse the trial court. Thank you. Thank you, Mr. Eichholz. Mr. Callan, your turn. Thank you. Members of the panel, good morning. Hello, sir. I know you started off with the Peterson issue. I was going to start off with that first, but I'll start off with it since you started off with the ambulance on the Peterson issue. We're going to wait until tomorrow, obviously, and that's going to be outcome determinative. But there's a unique perspective on the Peterson issue in this case. I would suggest that it's not a slam dunk that college expenses are a form of child support. I take exception to that. I'm not going to argue that because they'll tell us tomorrow what if child support is, in fact, in the nature of college expenses and vice versa. Well, we hope they will. We never should. Well, there is beyond my pay grade, Judge, and yours also, so we'll find out tomorrow. But what I want to elicit in this particular case is that Judge Brumman did not have the benefit of the Peterson case when he decided this case. This case was decided on June 25th, 2010. Peterson came out the following month in July 2010. But oddly enough, or maybe Judge Brumman is precinct, I don't know, but he did consider this issue in the record of pre-petition expenses and basically set him a sum up. I don't have the record in front of me. But what he said was, he says, well, you know, child support and child support case expenses, they're a little different. And I don't know if what I would do on a pre-petition expenses if somebody came after the, you know, the expenses were incurred and was looking backwards two or three years. He says, I don't know what he would do. But in this particular petition, what he did was he said, okay, Mrs. Peterson or Mrs. Jellom-Eichholz is going to take the first two years, he's going to take the second two years, and they are, in fact, what he's going to be responsible for is post-petition college expenses because he's got the second two years. Mrs. has got the first two years. So in that sense, Peterson might not even be an issue for this court to consider because he's only responsible for post-petition expenses. More than one way to skin a cat. There is absolutely more than one way to skin a cat, and that's why, you know, judges and lawyers make distinctions. And I have to hand it to Judge Brumman that he actually adumbrated that particular issue before Peterson was even decided by the First District Appellate Court. So consequently, we'll wait to see tomorrow what that is, and you can fashion the remedy that you believe is equitable. But college expenses are based on equity, not income, and I think that that's an extreme, not extreme, that's too extreme of a word, but is a distinction because we're talking money and income and property, and for child support, you're talking about income, statutory amount, it's fixed by statute, etc. College expenses, we're talking equity, and basically an equitable remedy, although it is statutory. I'm not saying it's an equitable remedy. All right, but it's just something you just said, we can fashion something we think is equitable. That's also above our pay grade, right? Well, no, in light of the Peterson case, it would still be something equitable. I would think whatever they decide. We affirm or reverse based on whatever the law is tomorrow afternoon. Correct. Correct. Mr. Kalamata, under the court's order, what happens if Eric decides not to go to the University of Iowa for the last two years? He's going to the University of Iowa, Judge. For the last two years? Well, as I understand the record, as I recall the record, he had been in Iowa for the first year and finished the first year in Iowa and was on the honor roll. That's in the record. My question is, what if he decides for whatever reason that he doesn't want to continue at the University of Iowa for the rest of his senior year? Then Mr. Rycoltz is off the hook, and so is his mother. There's no provision made in the order for any kind of eventuality like that? No, not currently. But I would imagine if that's the case, then the order would be moot. So is the appeal premature as to that? I believe he's still going to the University of Iowa, Judge. I have heard nothing to the contrary. Following up on Justice McBathe's inquiry, let's say two years and decides, I want to go and do another major, I want to do something different. And there's a school in New Mexico or one in Illinois for a program. I mean, can the parent go back in for a modification of this experience? I would believe yes, if it's in the form of a child support. Child support's always my priority. Right, right. So, yeah, I don't see any problem with that. Certainly it's modifiable. It would change circumstances. Adjustment, perhaps upward, but perhaps downward. Perhaps. That's absolutely correct, Your Honor. Sure. Education expenses like child support, if it is child support, is always modifiable. Based on the substantial change of circumstances. Yes. What's the evidence in the record that Iowa's physical therapy program is superior to that of St. Ambrose? Well, here's the evidence that I was able to glean from the record, Judge. The parties retained a college planner, Mr. Grole, I believe his name is. I'm having the same problem pronouncing his name. But a college planner. Yeah, right, a college planner. Now, ironically enough, he was retained by Mr. Eichholz in the beginning, and for some reason in the record does not silence that Mr. Eichholz got out of the process of planning for his son's college expense, their college contribution expenses for his college education. In any event, the University of Iowa was mentioned by the college planner, along with St. Ambrose, along with Marquette, and one other college that escaped me at the moment. The physical therapy program at Iowa and Marquette were graduate programs. They had a six-year PT program. And the college planner in the record, in the testimony, said that would be a good fit for Eric. So that's in the record that the Iowa would be a good fit. And he did apply. The Iowa has a graduate program in PT where St. Ambrose does not. The advantages that were put in the record is the benefits of a six-year program allows for preferential treatment for financial aid in the graduate program, which would be— He's not in a six-year program, is he? You've got to complete your undergrad and then apply to the graduate school, correct? I believe that's the case, Judge, yes. But as he's with Iowa, they have a preference to get into that graduate school over someone that didn't go to Iowa. Now, is that in the record? I believe that is in the record, Judge. Let's see. There are benefits of preferential treatment for financial aid. I was a guarantee that if you're accepted into the PT program, you'll be accepted into the six-year program. That was in the record. So Iowa is a guarantee that if you're accepted into a physical therapy program, you'll be accepted into the six-year program. So all you've got to do is be accepted at Iowa— That's my understanding, Your Honor. —into the undergraduate program, go through and get C-minuses all the way through, and you can go in the graduate program? I don't know if that's the case, Judge, but that seems to be what the records say. Well, if it is the case, there can't be a very good graduate program, can it? That's a judgmental call. You're probably correct about that. But my understanding was that he would be accepted—I'm not clear on the record on this, Judge. My understanding was if he got into Iowa, he would be in a six-year program if he was accepted into the physical therapy. That's what my understanding was of the record. Well, opposing counsel is making an argument that it's a petitioner's burden to establish that, and so that's why we're asking what's in the record to establish the preference for Iowa over a school that offers a program that's half the price. Well, the difference is that St. Ambrose doesn't have a graduate program that you can— But there's not enough evidence in this record as to ratings of quality of the programs, of the undergraduate programs. Is it silent as to that, or did we just have the college planner saying— Well, the college planner said Iowa would be a good fit for Eric. And the college planner— He was worried about—pardon, Judge? And the college planner, when we find out, the college planner compared whether Ambrose or Marquette would be good fits as well. Well, that's what I was indicating, what I believe the college planner testified, these things I went through, is that Ambrose does not have a PT program as such, and— Well, Ambrose does not have a graduate PT program where Iowa does. There are preferential treatments for advanced financial planning once you're on the hook. The parent's only on the hook for four years. After that, the student has to pay for his own master's degree education beyond the four years. Then there's preferential treatment for scholarships at Iowa that would not be available at St. Ambrose. And this is the college planner? This is the college planner, yes. This is the college planner who's talking about that. He also said there's a preference of—there's better access to internships was also in the record. There's better access to internships from the University of Iowa. That's in the record. You get to know the professors better with a six-year program. That's in the record. And so those are the things that the planner testified to. Some poor kid that's in a physical therapy program at PT might as well save his money and go home. If he's at St. Ambrose, I mean— Well, I don't think that's the case, Judge. I mean, everybody is different. Everybody's different in their own fingerprint. So it depends on your motivation. A lot of things are better in education. Your motivation, you know, your support system. There's a lot of variable factors. But the better chance you have is at Iowa to go on to be successful in your profession. One thing I would— Well, okay. Let's talk about that. What's the evidence of that? For example, is any evidence in the record that they got a higher percentage of getting hired? Any evidence in the record that maybe five or ten years out, they're making more money? No, there's no evidence in the record of that. Well, then where does this come from? I mean, somehow Iowa is going to be better off graduating from Iowa than St. Ambrose. Well, I'm suggesting to the court, I'm submitting to the court that the comparison between Iowa and Ambrose is an apple and an orange. There's really no comparison. Ambrose does not have a graduate program. Iowa does. The actual comparison would have been to Iowa and Marquette. Marquette has the same program or a similar program, not the same program. And that was more expensive, and Eric chose not to go there. The actual comparison would be to the University of Illinois, what their program was in physical therapy and graduate program, what that expense was. There's no evidence in the record of that. Counsel, Mr. Eichholz, comes up and says, well, you have to have a less expensive alternative. Now, the cases that you cite, I just want to make this point, are the Suzanne case and there was one other, I forget. Both of those were automotive workshop or automotive training, diesel mechanics and that sort of stuff. Once you get your two-year certificate from that, you're out turning a wrench. In physical therapy, four years doesn't necessarily mean you're going to get a very good job. You're going to need the two years of additional training. So I think that's a significant factor when you've got to compare not less expensive alternatives, they have to be comparable programs. And there's no comparison between Illinois and, say, Iowa in the record. And they're saying, well, that's my responsibility, my client's responsibility. I disagree with that. And in the case they cited, the respondent presented evidence that the university, the Triton School or whatever school it was, was a cheaper alternative in the same program. So it's a matter of who gets the burden of proof. I'm submitting that the burden of proof is that the district between Illinois and Iowa would have been the one who's seeking the less expensive alternative. Well, just so we're clear, even if he would have based, I mean, it seems like this young man is a good student. Yes. And from what it looks like on the record, a pretty serious student and a good kid. Yes. But he could still go to Iowa, but his assistance from his father is based on the expenses at St. Ambrose. And then if the child wants to make up the difference, if it's important enough to him, then he'd pick it up some way. All my point is, Judge, is that the comparison between Ambrose and Iowa and their programs is not comparable. It's less expensive, too, but it's not comparable. Well, it says you, but where's the evidence of the record? Well, the obvious evidence is that Iowa has a graduate program. Ambrose doesn't. But he's not in the graduate program. Isn't that like saying, well, better off to go to University of Illinois than St. Ambrose if you want to be a doctor, because, gee, University of Illinois has a medical school and St. Ambrose doesn't. We're talking about an undergraduate education here, and it's hard. I'll check the record. It's hard for me to accept that any graduate program that's worth its weight guarantees that you will get into that graduate program by virtue of being accepted as a high school senior into an undergraduate program. That just defies common sense. Well, if you look at the testimony of the college planner and the record, he does make reference to Iowa's benefits of going to Iowa, which include the guarantee of the six-year program and the financial aid that's available for him beyond the four-year college requirement, undergraduate requirements. Counselor, you have two minutes. Mr. Eichholz makes the strange argument that, well, he didn't choose a less expensive alternative. Does that mean, therefore, I'm off the hook completely? I don't have to pay a dime? And he goes on to say, well, he doesn't volunteer to pay anything on this and say, well, I'll pay half of the Ambrose. He doesn't say anything. He says, I'm too broke to pay that. You look at the record. You look at the financial statements in there. You look at Judge Brumman's findings. You'll find that Mr. Eichholz has sufficient assets to contribute to his son's education. And the empty pockets argument I'm submitting is just not there in the evidence. So Mr. Eichholz does not have empty pockets and should contribute to his son's college expenses. The same thing with the attorney's fees. Judge Brumman separated the wheat from the chaff on his income expense affidavit and found that he had $1,000 a month extra and Mrs. was slowly on the way to penury by the installment plan. But your argument is that this is not support, statutory income determined support, but that it's actually ability financial support. Correct. So that you can take into consideration debt load, no debt load, asset values. Absolutely. And Mr. Eichholz has very little debt other than his mortgage. And I suggest, Judge, it's time for Mr. Eichholz to pony up for his child's college education. If it's $32,000 for Ambrose, the child is paying 14% of it. He's paying the lion's share of it. Their parents are at nine and nine apiece. So the child is paying significantly more for his education than he's asking his parents to, or that the mother is asking the parents to. And, well, that's about all I have to say. I'm out of time. But, you know, that's the reality of it. The child is making the lion's share of the effort. And I think you can take that into consideration. And would be doing so even if you were at Ambrose? Well, yes. I believe so, yes. Okay. Thank you. Thank you, Mr. Cowell. Mr. Nickley. Thank you, Your Honor. How about that last argument there? I mean, you know, the child is paying the lion's share, either through recurring debt or other means. Well, I mean, he's going to be paying the lion's share, as Your Honor recognized, whether he goes to St. Ambrose or to University of Iowa. The point is, is he's made a choice currently in disregard of the cost of going to St. Ambrose versus University of Iowa. And it's unreasonable to have Mr. Eichholz pay the cost of the University of Iowa because those costs are unreasonable for the reasons that I've articulated here today. Now, I remember the record, maybe not surprisingly, a little different than counsel. Eric Eichholz specifically testified that there's no guarantee that he's going to get into the physical therapy graduate program at Iowa. He testified. He's the one going to the school. He said, I'm going to have to apply to get into there after my undergraduate at Iowa, and I expect it to be very difficult for me to do that, to be accepted. There's no guarantee I'm going to get into the graduate program at the University of Iowa. Now, this college expert, or this planner, I don't recall any testimony saying without a doubt that there's preferential treatment for Iowa students. He was generally talking about maybe some of the benefits of going to a college in which you want to go to the graduate program. But again, Eric, the one who's going to that school, says, I have to apply. I have to be accepted. There's no guarantees, and I think it's going to be difficult for me to do that. Now, I'm not the one saying that Mrs. Eichholz, John Eichholz, has the burden to show the differences between the schools. The courts have said that, including the court, the case cited by the appellee, the in-rate marriage of Schmidt. In that case, they said it was enough for the husband, the dad in that case, to show that there was a less expensive alternative and to say that they argued that he couldn't afford it, and that shifts the burden over. Maybe it's not shifting the burden, but then there has to be evidence from the petitioner that there are special attributes of the more expensive school for the student to go there. Now, I understand that the case, the Susan case. Now, what if the court would find the father can't afford it, then does it make a difference? You said it's a two-part test. If the father can't afford it, then that's the second part of the reasonableness test. What if the court finds implicitly that the father can't afford it? If he can't afford it, well, I think we still have to look at it. Apparently, this court did. Well, right, but then we still have to look at the first part that says that, you know, whether or not this is a reasonable choice based on the circumstances. Well, what would the college, what does the college planner say? Does he say it's a better fit or it's a good fit? He said it's a good fit, but he also testified that he believed that all six schools that he was looking at would be a good fit for Eric. There's no doubt that Eric is a good student. On the appearance, he seems like he's a good kid. He's going to succeed no matter where he goes. He testified it's a good, wherever he goes, it's going to be a good fit because of the type of student that Eric is. And I'm sure that Iowa is a good fit for him because he likes the people there and I'm sure he's having a good time and doing all the stuff that college students do. But the analysis is he's got to show that there's a special program or attribute or a reason why he justified the additional expenses of the, the additional cost of the college expenses. And there's been no evidence in the record to show that there's anything that makes Iowa any better than St. Ambrose. Counselor, you have one minute. Thank you. And just briefly in closing, I think it's very telling and curious, the comment that the trial court made during the middle of this trial. I believe in the record it was before Mr. Eichholz even had the opportunity to testify where he made a statement that, I've made up my mind, you know, go ahead and make a record, but I've made up my mind. I think that shows that there's an abuse of discretion here in the trial court's ruling. And based on that and what we've articulated here before, I'd ask that the court reverse the trial court on all the issues. Thank you. What did he say he made up his mind as to what? Or what are you arguing in that he said he made up his mind? I believe at that time the testimony was regarding financial issues, Your Honor. And he had before him the affidavit signed by your client under oath, this is my financial world. Well, that's true, Your Honor. So one more could be done. No, but at the same time it was before Mr. Eichholz even had an opportunity to testify. And as I previously said, there was issues regarding whether Mr. Eichholz's current wife's income should be included, and that was before any chance to explain that and all the issues regarding that. I mean, the fact of the matter was it was before the close of evidence, and I think it shows that there was an abuse of discretion here. It depends on what the object is. I've already made up my mind. Well, it would be my argument that in making such a statement before the close of the evidence that there was an abuse of discretion. What would happen if a juror announced that before the end of the trial? Well, if a juror announced that, I believe there would be a mistrial, Your Honor. I mean, if he or she made that public. Okay. Thank you, Mr. Daly. Mr. Callan, thank you. And this matter will be a brief recess for a panel change. This matter, by the way, will be taken under advice and the written disposition will be issued. Thank you, sir. Thank you. Thank you. Court.